# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 13, 2020

Lyle W. Cayce
Clerk

No. 19-50907

United States of America,

*Plaintiff—Appellee*,

*versus*

Rexdual Deneil Robinson, also known as Rexdual Robinson, also known as Rexdual Denneil Robinson,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
No. 6:09-cr-00272

Before Graves, Costa, and Engelhardt, *Circuit Judges*.
Kurt D. Engelhardt, *Circuit Judge*:

Defendant-Appellant, Rexdual Deniel Robinson, appeals the district court's denial of his motion for sentence reduction filed pursuant to section 404 of the First Step Act of 2018, Pub. L. 115-391, § 404, 132 Stat. 5194–249 (2018). The First Step Act allows defendants who were convicted and sentenced for certain offenses involving cocaine base ("crack"), prior to the effective date of the Fair Sentencing Act of 2010, to be resentenced as if the

reduced statutory minimum penalties implemented by the Fair Sentencing Act were in place at the time the offenses were committed.  On appeal, Robinson challenges the district court's refusal to consider the lower, non-career offender sentencing range that would apply if he were sentenced in 2019, rather than in 2010, in deciding whether to grant his First Step Act motion for sentence reduction.  Finding no abuse of discretion or legal deficiency in the district court's ruling, we AFFIRM.

## I.

Prior to the 2010 effective date of the Fair Sentencing Act, Rexdual Robinson pleaded guilty to possession with intent to distribute at least five grams of cocaine base within 1,000 feet of a public school, in violation of 21 U.S.C. §§ 841(a), (b)(1)(B)(iii), and 21 U.S.C. § 860(a), and was sentenced to a within-guidelines sentence of 210 months imprisonment and an eight-year term of supervised release. Having received a career offender sentence enhancement, under § 4B1.1 of the United States Sentencing Guidelines, Robinson's total offense level of 31, and criminal history category of VI, yielded an advisory guidelines range of 188–235 months of imprisonment. On the government's motion, filed pursuant to Rule 35 of the Federal Rules of Criminal Procedure, Robinson's sentence was reduced from 210 to 180 months.

In 2019, Robinson filed a motion seeking a retroactive sentencing reduction, pursuant to the First Step Act, contending that he should be resentenced based on a non-career offender guidelines range of 92–115 months. Robinson argued that he should no longer be sentenced as career offender because, after *United States v. Hinkle*, 832 F.3d 569 (5th Cir. 2016), and *United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir.), *opinion supplemented,* 854 F.3d 284 (5th Cir. 2017), his 1990 Texas conviction for delivery of cocaine no longer qualified as a predicate drug trafficking offense

for purposes of the U.S.S.G. § 4B1.1 career offender enhancement. Citing the various sentencing factors set forth in 18 U.S.C. § 3553(a), Robinson argued that a sentence reduction to 108 months was appropriate—because his post-sentencing conduct demonstrated rehabilitation—and was necessary to avoid unwarranted sentencing disparities between himself and persons sentenced as non-career offenders after the 2010 effective date of the Fair Sentencing Act.

After considering the parties' written submissions, including a reply memorandum filed by Robinson, the district court denied the motion in an nine-page written order. Relative to the issues on appeal, the district court stated, in pertinent part:

> In the event the Court determines Robinson is eligible for a reduction, the Government urges the Court to exercise its discretion and deny a reduction. The Government explains, given the quantity of cocaine base involved in Robinson's violation of the law, coupled with the fact that Robinson is a career offender, Robinson would have received the same sentence if the [Fair Sentencing Act] had been in effect at the time of Robinson's original sentencing. Conversely, Robinson argues he is no longer subject to the career offender status he was given due to changes in the law since the time of his original sentencing. Mot. at 1; Reply at 24–25.

> First, Robinson's argument that he is not a career offender under the current sentencing guidelines is misplaced. This argument was addressed by the Fifth Circuit in *United States v. Hegwood*, 934 F.3d 414 (5th Cir. 2019) (rejecting defendant's contention that the district court erred in refusing to apply Fifth Circuit precedent from 2017 to remove his career offender enhancement imposed in 2008). The defendant [in *Hegwood*] argued that after *Tanksley*, he no longer qualified for the career-offender enhancement (as does Robinson here). *Id.* at 416. The district court left the career-offender enhancement

No. 19-50907

in place, holding it was "going to resentence [Hegwood] on the congressional change and that alone." *Id.* The Fifth Circuit affirmed the holding of the district court.

. . .

In determining whether to reduce Robinson's sentence, the Court considers the section 3553(a) factors, along with any and all relevant post-conviction conduct, in order to impose a new sentence under the First Step Act that is sufficient but not greater than necessary. *See Pepper v. United States*, 562 U.S. 476, 480 (2011). Robinson's post-incarceration conduct is admirable, as he has not received any disciplinary infractions. [] Additionally, he has successfully worked in Tray Transport at the facility to which he has been assigned, and he has completed several educational courses. []

However, the Court will not exercise its discretion in this case. *See* First Step Act § 404(c) (stating "nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section). . . . First, Robinson's current sentence remains within the applicable statutory range. Even after the application of the Fair Sentencing Act, Robinson is still subject to a statutory maximum of 40 years imprisonment. Additionally, Robinson's current sentence of 180 months is below the guideline range of 188 to 235 months imprisonment (the relevant guidelines at the time of his sentencing) and it is within the new guideline range of 151 to 188 months imprisonment. Thus, the Court believes Robinson's sentence remains appropriate in this case.

Secondly, Robinson still remains subject to his career offender status, as previously discussed. Moreover, Robinson's conviction under 21 U.S.C. § 860(a) is particularly relevant in evaluating whether the Court should exercise its discretion. Section 860(a) doubles the penalty ranges for violations of 21 U.S.C. § 841(b) because a violation of section 860(a) involves possession or distribution of drugs within

4

1,000 feet of a school. Thus, the Court believes that a denial of Robinson's sentence is appropriate in light of section 3553(a)(2). *See* 18 U.S.C. § 3553(a)(2) (the court shall consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment").

Finally, the Court agrees with the Government that "Robinson's original sentence was imposed largely due to his extensive criminal history." [] Robinson's extensive record resulted in 15 criminal history points. [] He received 15 points even though no criminal history points were assigned for one felony drug conviction. [] Additionally, his criminal history reflects that Robinson distributed cocaine at least six times and possessed a significant amount of crack cocaine, not including his arrest for the instant case. PSR ¶¶ 30–32. Therefore, the Court finds that Robinson's criminal history and lack of respect for the law heavily weigh against granting a reduction in his sentence.

. . .

Having considered 18 U.S.C. § 3553(a); the United States Sentencing Guidelines in an advisory capacity; and the Guidelines Policy Statements pursuant to the Sentencing Reform Act, the Court finds that a sentence reduction is not appropriate in Robinson's case. . . .

*See* September 30, 2019 Order. This appeal followed.

## II.

The district court's discretionary decision whether to reduce a sentence pursuant to the First Step Act is generally reviewed for an abuse of discretion. *United States v. Stewart*, 964 F.3d 433, 435 (5th Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 319 & n.2 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2699 (2020). It is the defendant's burden to "show that the trial judge's action amounted to an . . . abuse of discretion." *United States v. Garcia*, 693

F.2d 412, 415 (5th Cir. 1982). "A court abuses its discretion when the court makes an error of law or bases its decision on a clearly erroneous assessment of the evidence." *United States v. Larry*, 632 F.3d 933, 936 (5th Cir. 2011) (internal quotation marks and citation omitted). "[T]o the extent the court's determination turns on the meaning of a federal statute such as the [First Step Act]," *de novo* review applies. *Jackson*, 945 F.3d at 319 (internal quotation marks and citation omitted).

## III.

The First Step Act of 2018 was enacted to remedy a gap left open by the Fair Sentencing Act of 2010 and various amendments to the United States Sentencing Guidelines relative to sentences imposed for certain crack offenses. In 2010, Congress enacted the Fair Sentencing Act in order to, among other things, reduce the disparity in treatment of crack and powder cocaine offenses by increasing the threshold quantities of crack required to trigger the mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A) and (B). *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Specifically, section 2 of the Fair Sentencing Act "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *Dorsey v. United States*, 567 U.S. 260, 269 (2012). In effect, section 2 "reduc[ed] the crack-to-powder cocaine disparity from 100–to–1 to 18–to–1." *Id.* at 264. Section 3 of the Fair Sentencing Act "eliminated a mandatory minimum sentence for simple possession of cocaine base." *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir.), *cert. denied*, 140 S. Ct. 285 (2019). The Fair Sentencing Act additionally instructed the Sentencing Commission to "make such conforming amendments to the Federal [S]entencing [G]uidelines as the Commission determines necessary to achieve consistency with other

No. 19-50907

guideline provisions and applicable law." Pub. L. No. 111-220, § 8(2), 124 Stat. at 2374.

Importantly, the Fair Sentencing Act's statutory changes were *not* retroactive. *Jackson*, 945 F.3d at 318. As a result, sentence modifications based on Sentencing Guidelines amendments that were implemented pursuant to the Fair Sentencing Act remained unavailable to (1) persons whose sentences were restricted by pre-Fair Sentencing Act statutory minimums; and (2) persons ineligible under 18 U.S.C. § 3582(c)(2) by virtue of having been sentenced as career offenders, pursuant to U.S.S.G. §4B1.1, "based on" higher guideline ranges than the reduced drug quantity guideline ranges in U.S.S.G. § 2D1.1. *See, e.g., Stewart,* 964 F.3d at 436 (citing U.S.S.G. § 1B1.10, cmt. 1); *United States v. Quintanilla*, 868 F.3d 315, 318 (5th Cir. 2017).

On December 21, 2018, however, the First Step Act of 2018 became law, introducing a number of criminal justice reforms. Pertinent here, section 404 of the First Step Act concerns retroactive application of the Fair Sentencing Act of 2010. Pub. L. No. 115-391, § 404(b), 132 Stat. at 5222.[1]

---

[1]  Section 404 of the First Step Act of 2018 provides:

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense *may*, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, *impose* a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act

Specifically, section 404 gives courts the discretion to retroactively apply the Fair Sentencing Act to reduce a prisoner's sentence for certain covered offenses. *Hegwood*, 934 F.3d at 418 ("It is clear that the First Step Act grants a district judge limited authority to consider reducing a sentence previously imposed."). A defendant is eligible for a sentence reduction under the First Step Act if: (1) he committed a "covered offense"; (2) his sentence was not previously imposed or reduced pursuant to the Fair Sentencing Act; and (3) he did not previously file a motion under the First Step Act that was denied on the merits. *Id.* at 416–17.

A "covered offense" within the meaning of the First Step Act is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." Pub. L. 115-391, § 404(a), 132 Stat. 5222. Whether a defendant has a "covered offense" under section 404(a) depends on the statute under which he was convicted, rather than facts specific to the defendant's violation. *Jackson*, 945 F.3d at 319–20. Thus, if a defendant was convicted of violating a *statute* whose penalties were modified by the Fair Sentencing Act, that defendant meets that aspect of a "covered offense." *Id.*

In terms of procedure, a reduced sentence may be imposed, pursuant to the First Step Act, upon motion made by a party, the Bureau of Prisons, or the court. Pub. L. No. 115-391, § 404(b), 132 Stat. at 5222. Nothing in section 404 expressly requires that a hearing be held. *Jackson*, 945 F.3d at 321. And,

---

of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Pub. L. No. 115-391, § 404, 132 Stat. at 5222 (emphasis added).

in *Jackson*, we rejected the defendant's contention that the district court abused its discretion by "supposedly failing to conduct a 'complete review' of his motion 'on the merits.'" *Id.* In contrast to cases in which a procedural deficiency had occurred, we determined that Jackson had had "his day in court" where he had "filed a detailed motion explaining why he should get a new sentence; the government responded; the court denied the motion; and, on limited remand, it explained why." *Id.* at 322.

Eligibility for resentencing under the First Step Act does not equate to entitlement. *Id.* at 321. Indeed, the statute expressly states: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Pub. L. No. 115-391, § 404(c), 132 Stat. at 5222. To the contrary, the decision whether to wield the resentencing authority granted by the First Step Act is one committed to the court's discretion. *Jackson*, 945 F.3d at 321.

The First Step Act likewise expressly prescribes the scope of the re-sentencing authority granted to courts. Specifically, section 404 directs: "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. at 5222. Given this statutory directive, "[i]t is clear that the First Step Act grants a district judge [only] limited authority to consider reducing a sentence previously imposed." *Hegwood*, 934 F.3d at 418.

## IV.

Since the statute's enactment in 2018, we, like the other circuit courts, have been asked to answer various questions regarding the proper interpretation and application of the First Step Act. These decisions inform and aid our consideration of the issues presented in this appeal.

A. *Other Changes in the Law*

In *Hegwood*, the defendant's sentence was based in part on a § 4B1.1 enhancement because he was determined to be a career offender due to his two prior felony controlled-substance offenses. *Hegwood*, 934 F.3d at 415. In addition to seeking the benefit of the reduced penalties set forth in the Fair Sentencing Act via section 404 of the First Step Act, Hegwood also sought application of *United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir.), *opinion supplemented*, 854 F.3d 284 (5th Cir. 2017), in which this court held that, in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), a particular Texas controlled substance offense no longer qualifies as a predicate conviction for purposes of the § 4B1.1 career offender enhancement. *Id.* at 416. In support of his position, Hegwood argued that the use of the word "impose" in the First Step Act, rather than the word "modify" found in 18 U.S.C. § 3582(c), along with the limitations referenced in U.S.S.G. §1B1.10(a)(3) for § 3582(c) modifications, meant that "the First Step Act requires a [Sentencing] Guidelines calculation to be made that is correct as of the time of the new sentence, and Section 3553(a) factors are to be applied anew." *Id.* at 417–18. Section 3553(a)(4) directs that a district court, "in determining the particular sentence to be imposed, shall consider . . . the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4).

Rejecting Hegwood's argument, we reasoned that, under the First Step Act, "calculations that had earlier been made under the Sentencing Guidelines are adjusted 'as if' the lower drug offense sentences were in effect at the time of the commission of the offense." *Hegwood*, 934 F.3d at 418. "That is the only explicit basis stated for a change in the sentencing[,][and][i]n statutory construction, the expression of one thing generally excludes the other." *Id.* Accordingly, we concluded:

No. 19-50907

The express back-dating of Sections 2 and 3 of the Fair Sentencing Act of 2010—saying the new sentencing will be conducted "as if" those sections were in effect "at the time the covered offense was committed"— supports that Congress did *not* intend that other changes were to be made as if they too were in effect at the time of the offense.

*Id.* (emphasis added). We thus explained the mechanics of the First Step Act resentencing process as follows:

The district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act. The district court's action is better understood as imposing, not modifying, a sentence, because the sentencing is being conducted as if all the conditions for the original sentencing were again in place with the one exception. The new sentence conceptually substitutes for the original sentence, as opposed to modifying that sentence.

*Id.* at 418–19. On the other hand, *like* the sentence modification procedure in § 3582(c)(2), "which opens the door only slightly for modification of previously imposed sentences for certain specified reasons," imposition of a new sentence under § 404(b) similarly does not involve a "plenary resentencing proceeding" and permits "only a limited adjustment." *Id.* at 418 (quoting *Dillon v. United States,* 560 U.S. 817, 826 (2010)). Because of the district court's limited role under § 404(b), we held that "[t]he district court committed no error in continuing to apply the career-criminal enhancement when deciding on a proper sentence for Hegwood." *Id.* at 419.

In reaching this conclusion, we found no conflict between our interpretation of section 404 of the First Step Act and the provisions of 18 U.S.C. §§ 3582 and 3553. *Id.* at 418. We reasoned:

The district court under Section 3582(a) is only required to consider the Section 3553(a) factors "to the extent that they

> are applicable." The government, relying on the fact that the First Step Act gives the court discretion whether to reduce a sentence, argues that the ordinary Section 3553(a) considerations apply to determine whether to reduce the defendant's sentence.

*Id.*

Earlier this year, in *Stewart*, we again faced a question concerning the legal authorities under which a First Step Act motion is to be considered. 964 F.3d at 437. In that case, the parties did not dispute Stewart's eligibility to seek a sentencing reduction under the First Step Act. Rather, they disagreed regarding the version of the Sentencing Guidelines that governed imposition of his reduced sentence. Citing *Hegwood*, the government argued Stewart's offense level should have been calculated using the 2001 Sentencing Guidelines (those in effect at the time of his original sentencing), rather than the less onerous 2018 Sentencing Guidelines, which by virtue of Amendment 750, would yield a lower offense level and resulting sentencing range. We held that the district court erred in refusing to apply Amendment 750 in calculating Stewart's post-First Step Act sentencing range, reasoning that Amendment 750 is "an alteration of the legal landscape" promulgated pursuant to the Fair Sentencing Act itself. *Stewart*, 964 F.3d at 437.

Significantly, *Hegwood* was distinguished as prohibiting only consideration of interim change in the law having nothing to do with the Fair Sentencing Act. *Id.* at 438. ("*Hegwood* primarily stands for the proposition that defendants seeking relief under section 404(b) of the [First Step Act] cannot take advantage of changes in the law that have nothing to do with [the Fair Sentencing Act].") "Unlike the defendant in *Hegwood*, Stewart [did] not seek removal of his career offender status at all, let alone based on intervening, non-FAIR-related caselaw." *Id.* "Instead, Stewart invoke[d] a change in the law that *did* result from [the Fair Sentencing Act]: Amendment

750's revision of the marijuana equivalency for crack cocaine." *Id.* "Put differently, Amendment 750 is an alteration to the legal landscape 'mandated by [the Fair Sentencing Act]' and therefore a valid consideration in the 'mechanics of First Step Act sentencing.'" *Id.* at 439 (quoting *Hegwood*, 934 F.3d at 418).

Accordingly, although Stewart's *career offender enhancement* was not eliminated by the First Step Act (consistent with the limited legal changes that *Hegwood* has determined that the First Step Act authorizes), the Fair Sentencing Act's changed statutory minimums and maximums reduced his corresponding *career offender offense level* (from 37 to 34), pursuant to U.S.S.G. § 4B.1.1, such that his resulting guidelines range was 262–327 months imprisonment (using the 2018 Sentencing Guidelines), rather than 324–405 months imprisonment (using the 2001 Sentencing Guidelines). *Id.* at 436–39.[2] Notably, the *Stewart* panel was careful to emphasize that "we need not and do not decide whether a district court faced with a resentencing motion invoking section 404(b) of the [First Step Act] must apply *all* retroactive amendments to the Sentencing Guidelines." *Id.* at 439.

B. *Consideration of Post-Sentencing Conduct*

In *Jackson*, which was decided in the interim between *Hegwood* and *Stewart*, we rejected the assertion that the district court is *obligated* to consider the movant's post-sentencing conduct. 945 F.3d at 322 & n.7. To explain our ruling, we reiterated *Hegwood*'s conclusions that, under the First

---

[2] Relatedly, in *Hegwood*, we affirmed the district court's two-point reduction of Hegwood's career offender offense level (based on the First Step Act), as well as the district court's refusal to eliminate Hegwood's career offender enhancement based on "intervening caselaw" that would, if applied, "preclude[] his prior convictions from triggering the career offender enhancement altogether." *See Stewart*, 964 F.3d at 438 (citing *Hegwood*, 934 F.3d at 416–19).

Step Act, the court (1) "plac[es] itself *in the time frame of the original sentencing*, altering the relevant legal landscape *only by* the changes mandated by the 2010 Fair Sentencing Act"; and (2) "cannot consider *other* post-sentencing changes in the law." *Id.* (quoting *Hegwood*, 934 F.3d at 418) (emphasis added). Given those determinations, we reasoned, in *Jackson*, that it "would therefore make little sense to *mandate* . . . that the court consider a defendant's *post-sentencing* conduct, which would be to peer outside 'the time frame of the original sentencing.'" 945 F.3d at 322 & n.8 (emphasis added in part). Nevertheless, "we did '*not* hold that the court *cannot* consider post-sentencing conduct—only that it isn't *required* to.'" *Id.* at 322 n.7 (emphasis added).

C. *Other Consideration of 18 U.S.C. § 3553 (a) Factors*

In *Jackson*, finding no abuse of discretion had occurred, we additionally concluded that the district court "properly considered Jackson's extensive criminal history and role in the offense in declining to reduce the sentence." 945 F.3d at 322. In other words, we determined that the district court *could* consider the § 3553(a) factors in deciding whether to reduce a sentence under the First Step Act. *Id.; see* 18 U.S.C. § 3553(a) (identifying factors including "the nature and circumstances of the offense and the history and characteristics of the defendant"). However, we did *not* "hold that the court *must* consider the factors in [] § 3553(a) in deciding whether to resentence under the [First Step Act]; instead, we "reserve[d] the issue for another day." *Id.* at 322 n.8.

D. *Reduction of a "Within Guidelines Range" Sentence*

Most recently, in *United States v. Carr,* 823 F. App'x 252 (5th Cir. 2020), the appellant argued that the district court erroneously interpreted the First Step Act to preclude the reduction of a sentence that remained within the imprisonment range calculated pursuant to applicable provisions

of the United States Sentencing Guidelines  (hereinafter referred to as the "guidelines range") at the time of resentencing. Despite the First Step Act's statutory changes, Carr's resulting guidelines range was unaffected and his original sentence remained within that range. Carr was designated a career offender under U.S.S.G. § 4B1.1 and had been sentenced to concurrent 327-month prison terms on two counts, as well as a consecutive term of 60 months on a firearm offense.  In his First Step Act motion, Carr argued that his good behavior in prison warranted a downward reduction from the otherwise applicable guidelines range.  Denying Carr's motion, the district court explained: "A downward variant sentence of imprisonment is not imposed since the original sentencing judge imposed a guideline sentence."

On appeal, both parties presumed that the First Step Act permits a downward departure from the guidelines range in this context. Carr argued that the district court, however, erroneously interpreted the First Step Act to *preclude* the reduction of a sentence that remained within the guidelines range at the time of a First Step Act resentencing. In support of this position, Carr emphasized the district court's failure to "address any of the arguments and evidence" that he had presented, including his "claimed exemplary post-sentencing conduct in prison."

Affirming the district court, we noted that *Jackson* expressly held that district courts applying the First Step Act are not "*obliged* to consider . . . post-sentencing conduct." *Carr,* 823 F. App'x at 255 n.2 (quoting *Jackson,* 945 F.3d at 321) (emphasis added).  We further concluded that Carr had failed to show that the district court based its decision on an erroneous interpretation of the First Step Act, explaining:

> On the contrary, a more plausible interpretation of the district court's reasoning is that the court exercised its discretion and *chose* not to reduce Carr's original term of imprisonment. For example, the court explained that a

downward variance "is" not imposed—not that a downward variance "must" not be imposed, "cannot" be imposed, or "may" not be imposed. In the absence of any mandatory language, we cannot assume that the district court misinterpreted the [First Step] Act and perceived itself to be bound by a statutory rule or requirement. Indeed, Carr himself argued in the district court that the First Step Act "places no restriction on what [a court] may consider in imposing a reduced sentence." To be sure, we find more persuasive the understanding that the district court believed Carr's original term of imprisonment to remain appropriate, and so decided, as an exercise of its broad discretion, not to impose a lesser term.

In any event, even if we found the district court's reasoning ambiguous, Carr has the burden to convince us that an abuse of discretion actually occurred. *Garcia*, 693 F.2d at 415. Identifying an ambiguous statement that *could* be read to evince an abuse of discretion is not enough.

*Carr,* 823 F. App'x at 255.

## V.

In this appeal, Robinson challenges the district court's refusal to consider the lower, non-career offender sentencing range that would apply if he were sentenced in 2019, rather than in 2010, in deciding whether to grant his First Step Act motion for sentence reduction. Thus, we are asked to decide whether a district court, in exercising the sentencing discretion granted by the First Step Act, *may* consider, as a § 3553(a) sentencing factor, that a defendant originally sentenced as a career offender, for purposes of U.S.S.G. § 4B1.1, would *not* hold that status if originally sentenced, for the same crime, today.

Our research has revealed that a number of our sister circuits likewise are being asked similar questions. *See United States v. Griffin,* 821 F. App'x

249 (4th Cir. 2020); *United States v. Deruise,* 816 F. App'x 427, 429 (11th Cir. 2020); *United States v. Sims*, 824 F. App'x 739 (11th Cir. 2020); *United States v. Flowers,* 963 F.3d 492 (6th Cir. 2020); *United States v. Hudson,* 967 F.3d 605 (7th Cir. 2020); *United States v. Kelley,* 962 F.3d 470 (9th Cir. 2020); *United States v. Harris,* 960 F.3d 1103, 1106–07 (8th Cir. 2020); *United States v. Chambers*, 956 F.3d 667 (4th Cir. 2020); *United States v. Shaw,* 957 F.3d 734, 741–42 (7th Cir. 2020). Although the case law is still evolving, it appears that most circuits generally *permit*, but not *require*, some consideration of current guideline ranges, in evaluating a First Step Act motion, insofar as the information relates to § 3553(a) factors.

In this circuit, our decisions in *Hegwood*, *Jackson*, and *Stewart* are controlling. Based on those cases, any argument by Robinson that the district court was *required* to consider the lower non-career offender guideline range that would apply if his *original* sentencing were in 2019, rather than 2010, is foreclosed as a matter of law pursuant to our rule of orderliness. On the other hand, as our discussion above indicates, we have approved courts' consideration of § 3553(a) factors in deciding First Step Act motions. Although *Jackson* had not been decided at the time that Robinson's motion was denied, *Hegwood* had. *See Hegwood*, 934 F.3d at 418; *see also* 18 U.S.C. § 3553(a) (identifying factors including "the nature and circumstances of the offense and the history and characteristics of the defendant").

Robinson nevertheless contends that the district court interpreted *Hegwood* as prohibiting *any* consideration of the fact that he would not be sentenced as a career offender if sentenced today. As the quoted excerpt from its order reflects, the district court, citing our decision in *Hegwood*, certainly stated: "Robinson still remains subject to his career offender status." *See* September 30, 2019 Order at 8. Importantly, however, that is not all the order states.

Conversely, the order reflects the court's full awareness and understanding of Robinson's position and all of the information that he provided in support of it. In other words, the order reflects that the district court gave due consideration to all of Robinson's arguments in favor of a reduction in light of the § 3553(a) factors. Indeed, the district court expressly confirmed—three different times—that it was considering § 3553(a) factors, including Robinson's post-incarceration work, which the court characterized as "admirable." *See* September 30, 2019 Order at 4, 7–8. Nevertheless, the court decided that it "will not exercise its discretion in this case." *Id.* at 7.

Contrary to Robinson's assertion, a close look at the remainder of the court's order reveals the primary reason for this decision was *not* because the court thought it was precluded from considering what Robinson's guidelines range would be if his original sentencing were in 2019, rather than 2010. Undoubtedly, the district court's true focus, in deciding to deny Robinson's motion, was his "extensive criminal history"—which included numerous drug distribution offenses—and his "lack of respect for the law." *Id.* at 8. In fact, the court's order expressly states: "Robinson's conviction under 21 U.S.C. § 860(a) is particularly relevant in evaluating whether the Court should exercise its discretion." *Id.* This is understandable, since, as the court explains: "Section 860(a) doubles the penalty ranges for violations of 21 U.S.C. 841(b)," yielding Robinson's 40-year statutory maximum, "because a violation of section 860(a) involves possession or distribution of drugs within 1,000 feet of a school." *Id.*

The order further clarifies:

> Thus, the Court believes that a denial of Robinson's sentence is appropriate in light of section 3553(a)(2). *See* 18 U.S.C. § 3553(a)(2) (the court shall consider "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment").

Finally, the Court agrees with the Government that "Robinson's original sentence was imposed largely due to his extensive criminal history." Robinson's extensive record resulted in 15 criminal history points. He received 15 points even though no criminal history points were assigned for one felony drug conviction. Additionally, his criminal history reflects that Robinson distributed cocaine at least six times and possessed a significant amount of crack cocaine, not including his arrest for the instant case. Therefore, the Court finds that Robinson's criminal history and lack of respect for the law heavily weigh against granting a reduction in his sentence.

*Id.*

Additionally, as the government emphasizes, there is no suggestion in the entirety of the nine-page order that the district court wanted to reduce Robinson's sentence but thought itself legally barred from doing so. To the contrary, *Hegwood* emphasizes that the decision whether to reduce a sentence is firmly committed to the district court's discretion. At any rate, we are not persuaded that any legal error occurred here in the district court's assessment of Robinson's motion. That is, we are not convinced that the district court based its determination on an erroneous interpretation of the First Step Act or *Hegwood.* Instead, as we concluded in our recent decision in *Carr,* it is more plausible, on the record before us, that the district court, having evaluated all pertinent factors, simply exercised its statutory discretion to deny the motion. And, on this record, we find no abuse of discretion.

## VI.

For the reasons stated herein, we AFFIRM.