# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60624

United States Court of Appeals
Fifth Circuit

**FILED**

July 9, 2020

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JAMIE L. STEWART, also known as Pig,

Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Mississippi

Before DAVIS, GRAVES, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

The First Step Act of 2018 ("FSA") allows defendants convicted of certain crack cocaine offenses to be resentenced as if the reduced statutory minimum penalties implemented by the Fair Sentencing Act of 2010 ("FAIR") were in place at the time the offenses were committed. We have clarified, though, that the FSA does not permit "plenary resentencing." *United States v. Hegwood*, 934 F.3d 414, 415 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 285 (2019). Based on *Hegwood*, the district court calculated defendant Jamie Stewart's post-FSA sentence using the Sentencing Guidelines in effect at the time of his original conviction, thereby denying Stewart the benefit of a Guidelines amendment mandated by FAIR. Because this was error, we vacate and remand.

No. 19-60624

## I.

In 2002, Stewart pleaded guilty to conspiracy to distribute more than 50 grams of cocaine base (crack cocaine), which, at the time, subjected him to a statutory penalty range of 10 years to life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (2001). Using the 2001 Sentencing Guidelines, the presentence report ("PSR") held him responsible for 731.12 grams of crack cocaine and 102 grams of powder cocaine, which converted to 14,642.8 kilograms of marijuana equivalency and resulted in a base offense level of 36. However, Stewart had three prior felony drug convictions, making him a "career offender." U.S.S.G. § 4B1.1 (2001). Because the statutory maximum for his offense of conviction was, at the time, life imprisonment, Stewart's offense level was increased to 37 and his criminal history category was increased to VI under the career offender provisions of section 4B1.1 (2001), yielding a guidelines range of 360 months to life. The district court imposed a low-end sentence of 360 months imprisonment to be followed by a 5-year term of supervised release.

In 2019, Stewart moved for resentencing under section 404 of the FSA, which provided for retroactive application of sections 2 and 3 of FAIR, which in turn reduced the statutory penalties for crack cocaine offenses. The Government agreed that Stewart was eligible for a sentence reduction and calculated that the FSA would reduce Stewart's sentencing range to 262–327 months imprisonment.[1]

---

[1] The Government argued, however, that had FAIR been in effect in 2001, Stewart would have been indicted for distributing 280 grams of crack cocaine, rather than only 50, subjecting him to a base offense level of 37 under 4B1.1 and leaving his Guidelines range unchanged. The district court rejected this argument, holding it could not "make assumptions about what the government or a defendant would have done had the law been different." The Government does not re-urge this argument on appeal. *Cf. United States v. Boulding*, 960 F.3d 774, 779 (6th Cir. 2020) (stating that "every circuit court to address this question has held that eligibility for resentencing under the [FSA] turns on the statute of conviction, not a defendant's specific conduct").

No. 19-60624

Citing *Hegwood*, the district court concluded that it was "constrained to only consider the effects of the [FSA] on [Stewart's] Guideline range, and what sentence the Court would have given under the new range at the time of his original sentencing." This led the court to apply "the Guidelines in effect at the time," i.e., the 2001 Sentencing Guidelines. The court noted that had FAIR been in effect at the time of Stewart's conviction, the statutory range for his crime would have been 5 to 40 years, rather than 10 years to life, a reduction that would have lowered Stewart's career offender level from 37 to 34. However, the court held that—based on the PSR's calculation of 14,642.8 kilograms of marijuana equivalency (computed according to the 2001 Guidelines)—Stewart's base offense level remained 36. Being higher than his new career offender level, Stewart's base offense level became his new total offense level. *See* U.S.S.G. § 4B1.1. Stewart's criminal history category remained Category VI, yielding a new sentencing range of 324–405 months imprisonment. The district court then declined to reduce Stewart's sentence on the grounds that his existing 360-month sentence was in the middle of the revised guidelines range, Stewart absconded before sentencing, the amount of drugs involved in the offense "was enough to warrant the second highest base offense level under the Guidelines at that time," and it "likely would have sentenced Stewart to a similar term of imprisonment in 2002 under his new Guideline range." Stewart timely appealed.

## II.

We review a district court's ruling on a motion to resentence under the FSA for abuse of discretion. *United States v. Jackson*, 945 F.3d 315, 319 (5th Cir. 2019). However, "to the extent the court's determination turns on the meaning of a federal statute such as the FSA, our review is *de novo*." *Id.* (cleaned up).

3

No. 19-60624

## III.

The only issue before us is whether the district court erred by constraining itself to the 2001 Sentencing Guidelines when it calculated Stewart's sentencing range under the FSA. Before turning to the parties' arguments on that issue, we begin with an overview of FAIR and the FSA.

## A.

Congress enacted FAIR in 2010 in order to, among other things, reduce the disparity in treatment of crack cocaine and powder cocaine offenses by increasing the threshold quantities of crack cocaine required to trigger the mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A) and (B). *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Specifically, section 2 of FAIR "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *Dorsey v. United States*, 567 U.S. 260, 269 (2012). In effect, FAIR "reduc[ed] the crack-to-powder cocaine disparity from 100–to–1 to 18–to–1." *Id.* at 264. These changes, however, were not retroactive. *See Jackson*, 945 F.3d at 318.

In FAIR, Congress also directed the Sentencing Commission to "promulgate the guidelines, policy statements, or amendments provided for in [FAIR] as soon as practicable." § 8, 124 Stat. 2374; *see also Dorsey*, 567 U.S. at 273 (observing that FAIR "require[d] the Commission to change the Guidelines in the wake of the Act's new minimums"). The Commission responded by promulgating Amendment 750 to the Guidelines, which "lowered the base offense levels for crack cocaine offenses in conformity with [FAIR]." *United States v. Kelly*, 716 F.3d 180, 180 (5th Cir. 2013). In particular, Amendment 750 modified the Guidelines so that "offenses involving 28 grams or more of crack cocaine are assigned a base offense level of 26, offenses involving 280

grams or more of crack cocaine are assigned a base offense level of 32, and other offense levels are established by extrapolating proportionally upward and downward on the Drug Quantity Table." U.S.S.G. App. C–Vol. III, Amend. 750, at 393 (2018). By comparison, the 2001 Guidelines assigned a base offense level of 26 to crimes involving as little as 5 grams of crack cocaine. U.S.S.G. § 2D1.1(c) (2001).[2] Relevant here, Amendment 750 also changed the marijuana equivalency formula for crack cocaine, reducing the equivalency for each gram of crack cocaine from 20,000 grams of marijuana to 3,571 grams of marijuana. U.S.S.G. App. C–Vol. III, Amend. 750, at 394 (2018).[3]

Not only did the Sentencing Commission revise the Guidelines to conform to FAIR, the Commission also made the revisions retroactive. *See* U.S.S.G. App. C–Vol. III, Amend. 759, at 416–21 (2018); *cf. United States v. Benton*, 546 F. App'x 365, 367 (5th Cir. 2013). However, because FAIR itself was not retroactive, defendants originally sentenced prior to FAIR's enactment who—based on Amendment 750—sought a discretionary sentence reduction under 18 U.S.C. § 3582(c)(2) (authorizing reductions for defendants originally sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission") found themselves precluded from having their sentences reduced below the pre-FAIR statutory minimums. *See, e.g., Kelly*, 716 F.3d at 181–82 (relying on *United States v. Carter*, 595 F.3d 575, 581 (5th Cir. 2010)). This is because "a reduction in the defendant's term of imprisonment is not authorized under 18 U.S.C. § 3582(c)(2)" if "the amendment does not have the effect of lowering the defendant's applicable

---

[2] For an offender with a criminal history category of I, an offense level of 26 corresponds to a sentencing range of 63–78 months imprisonment, i.e., just above the pre-FAIR statutory minimum of 5 years for crimes involving 5 grams of crack cocaine. U.S.S.G. § 5.A (Sentencing Table).

[3] A later amendment replaced "marijuana equivalency" with the current "converted drug weight" terminology. *See* U.S.S.G. Supp. to App. C, Amend. 808, at 179–87 (2018).

guideline range because of the operation of another guideline or statutory provision (e.g., a statutory mandatory minimum term of imprisonment)." U.S.S.G. § 1B1.10, cmt. 1. Moreover, a separate problem faced crack cocaine defendants who, like Stewart, were originally sentenced as career offenders: Defendants sentenced under 4B1.1 are ineligible for a § 3582(c)(2) reduction. *United States v. Quintanilla*, 868 F.3d 315, 317 (5th Cir. 2017); *United States v. Banks*, 770 F.3d 346, 349 (5th Cir. 2014).

Congress addressed these issues in 2018 when it enacted the FSA, which made sections 2 and 3 of FAIR retroactive and permitted crack cocaine defendants sentenced prior to the FSA to petition for relief. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018); *see also Hegwood*, 934 F.3d at 416. Under section 404(b) of the FSA, a court has discretion to "impose a reduced sentence as if sections 2 and 3 of [FAIR] were in effect at the time the covered offense was committed." 132 Stat. at 5222. We have held, however, "that the [FSA] does not allow plenary resentencing." *Hegwood*, 934 F.3d at 415; *accord United States v. Kelley*, 962 F.3d 470, 470 (9th Cir. 2020); *United States v. Alexander*, 951 F.3d 706, 708 (6th Cir. 2019).[4]

## B.

The parties agree that Stewart is eligible to seek a sentence reduction under section 404 the FSA. Indeed, in their district court papers, both parties calculated that—under the 2018 Sentencing Guidelines—Stewart's new sentencing range was 262–327 months, a reduction compared to Stewart's original 360-month sentence. The shorter sentencing range arises because the total quantity of crack and powder cocaine attributed to Stewart in the PSR

---

[4] *But see United States v. Chambers*, 956 F.3d 667, 672–73 (4th Cir. 2020) (holding the FSA permits courts to apply intervening case law to reevaluate a defendant's career offender designation).

is—thanks to Amendment 750—now equivalent to 2,631.2 kilograms of marijuana (as opposed to 14,642.8 kilograms), a quantity that corresponds to a base offense level of not more than 32.[5] Because Stewart's post-FSA career offender level is 34 (down from 37 based on FAIR's now-retroactive 40-year statutory maximum for his offense of conviction), his total offense level is 34—the higher of the two levels. *See* U.S.S.G. 4B1.1(b). With a criminal history category of VI, this puts Stewart at a Guidelines range of 262–327 months imprisonment.

Stewart argues the district court erred in applying the 2001 Guidelines instead of 2018 Guidelines, resulting in a base offense level of 36 instead of 34. He maintains the FSA was enacted "to provide courts with authority to reduce unduly harsh sentences for pre-2010 crack cocaine offenses," and that using the 2001 Guidelines denies him any FSA or FAIR relief. Stewart's reasoning is simple, if overstated: "Without the benefit of the updated Guidelines, defendants would almost never receive any decrease from the First Step Act." The Government responds that the district court properly applied our decision in *Hegwood* and "acted in a procedurally reasonable manner by using the 2001 Sentencing Guideline manual to apply FAIR to Stewart's sentence."

We agree with Stewart that the district court erred by constraining itself to the 2001 Sentencing Guidelines when calculating Stewart's new sentencing range under the FSA, thereby denying him the benefit of Amendment 750's

---

[5] Although 2,631.2 kilograms of marijuana currently translates to a base offense level of 30, that same quantity would have been assigned a base level of 32 prior to Guidelines Amendment 782. *See* U.S.S.G. § 2D1.1 (2001). Amendment 782, promulgated in 2014, reduced by two the base offense levels in § 2D1.1's drug quantity table. *See* U.S.S.G. Supp. to App. C, Amend. 782, at 59–69 (2018). Although Stewart suggests that by not using the 2018 Sentencing Guidelines, the district court denied him the benefit of Amendment 782, it turns out Amendment 782 would offer no advantage to Stewart beyond what Amendment 750 already provides. This is because Stewart's total offense level under the 2018 Guidelines would be 34 on account of his career offender enhancement under § 4D1.1. Therefore, any further reduction to his quantity-based offense level—e.g., from 32 to 30—is irrelevant.

change to the marijuana equivalency calculation for crack cocaine—a change compelled by FAIR. As Stewart points out, a dilemma arises if the FSA is understood to compel district courts to disregard Amendment 750 when calculating a defendant's sentence under section 404(b) because the pre-FAIR Sentencing Guidelines were calibrated to align with the very statutory minimums FAIR discarded. *See Dorsey*, 567 U.S. at 267.

In Stewart's case, FAIR's reduced statutory minimums, which were made retroactive by the FSA, lower his career offender level from 37 to 34 (as the district court acknowledged). The problem, though, is that without the benefit of Amendment 750's changes to the crack cocaine equivalency calculation, Stewart's quantity-based offense level remains pegged at 36, preventing him from taking full advantage of the reduced career offender level.[6] With Amendment 750's revised equivalencies in place, however, Stewart's post-FSA quantity-based offense level drops below his new career offender level, leaving him with a total offense level of 34 and a Guidelines range of only 262–327 months imprisonment.

As Stewart's case shows, the prospect of relief under the FSA would prove illusory for some crack cocaine defendants if courts were obligated to calculate sentencing ranges according to the Guidelines in effect at the time of the original offenses, without the benefit of Amendment 750. Such a result runs counter to the aim of the FSA, which authorizes courts to "impose a *reduced* sentence as if sections 2 and 3 of [FAIR] were in effect at the time the covered offense was committed." § 404(b), 132 Stat. at 5222 (emphasis added). More to the point, in attempting to address the sentencing disparity between

---

[6] Nor it is likely Stewart could obtain the benefit of Amendment 750 by invoking § 3582(c)(2), since that option is not available to defendants who, like Stewart, are serving sentences as career offenders. *See Quintanilla*, 868 F.3d at 317; *Banks*, 770 F.3d at 349.

crack cocaine and powder cocaine offenses, FAIR expressly directed the Sentencing Commission to "make such conforming amendments to the Federal sentencing guidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." § 8(1), 124 Stat. at 2374; *see also Dorsey*, 567 U.S. at 269–70. Accordingly, courts applying the FSA should, at the very least, apply the Guidelines amendment compelled by FAIR itself; namely, Amendment 750.

Our decision is *Hegwood* is not to the contrary and, if anything, supports the application of Amendment 750 in cases like Stewart's. *Hegwood* involved a crack cocaine defendant who, like Stewart, was originally sentenced as a career offender. 934 F.3d at 415. After Congress enacted FAIR and the Commission promulgated Amendment 750, the defendant in *Hegwood* moved for resentencing under § 3582(c)(2), but the district court denied the motion because the defendant was originally sentenced as a career offender. *Id.* at 416; *cf. Quintanilla*, 868 F.3d at 317. Eventually, after Congress passed the FSA, the defendant again moved for a sentence modification, arguing that (1) the FSA reduced his career offender level by two points and (2) intervening caselaw precluded his prior convictions from triggering the career offender enhancement altogether. *Hegwood*, 934 F.3d at 416. The district court granted the two-point reduction but declined to eliminate the defendant's career offender enhancement. *Id.* We affirmed. *Id.* at 419. In rejecting the defendant's argument that the district court should have removed his career offender enhancement altogether based on intervening Fifth Circuit caselaw, we held that section 404(b) of the FSA does not permit plenary resentencing, but rather "grants a district judge limited authority to consider reducing a sentence previously imposed." *Id.* at 418. We instructed that "[t]he calculations that had earlier been made under the Sentencing Guidelines are adjusted 'as if' the lower drug offense sentences were in effect at the time of the commission of the

offense," clarifying that "[t]he district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by [FAIR]." *Id.*

*Hegwood* primarily stands for the proposition that defendants seeking relief under section 404(b) of the FSA cannot take advantage of changes in the law that have nothing to do with FAIR. *Cf. Jackson*, 945 F.3d at 321 (describing *Hegwood* as holding "the court couldn't consider *other* post-sentencing changes in the law"). But unlike the defendant in *Hegwood*, Stewart does not seek removal of his career offender status at all, let alone based on intervening, non-FAIR-related caselaw. Instead, Stewart invokes a change in the law that *did* result from FAIR: Amendment 750's revision of the marijuana equivalency for crack cocaine. As discussed above, FAIR specifically instructed the Sentencing Commission to make changes to the Guidelines in order to bring them into conformity with sections 2 and 3 of FAIR, and Amendment 750's revision of the marijuana equivalency for crack cocaine was one such change. Put differently, Amendment 750 is an alteration to the legal landscape "mandated by [FAIR]" and therefore a valid consideration in the "mechanics of First Step Act sentencing." *See Hegwood*, 934 F.3d at 418.

In sum, we hold the district court erred by constraining itself to the 2001 Sentencing Guidelines when calculating Stewart's post-FSA sentencing range, thereby denying him the benefit of Amendment 750's change to the marijuana equivalency calculation for crack cocaine—a change compelled by FAIR. Because the only Guidelines change necessary for the relief Stewart seeks is Amendment 750, which in relevant part was mandated by FAIR, we need not and do not decide whether a district court faced with a resentencing motion invoking section 404(b) of the FSA must apply *all* retroactive amendments to the Sentencing Guidelines. Many Guidelines amendments have nothing to do with FAIR. For example, Amendment 782 reduced by two points the base

offense levels for most drug offenses, including crack cocaine offenses, so the sentencing ranges for first-time offenders would straddle the statutory minimums, instead of being entirely above the statutory minimums. *See* U.S.S.G. Supp. to App. C, Amend. 782, at 59–69 (2018). We express no view on whether giving defendants the benefit of such a change under the FSA runs afoul of *Hegwood*.[7]

\* \* \*

For the foregoing reasons, we VACATE the district court's order denying Stewart's motion for resentencing under the FSA and REMAND for reconsideration in light of this opinion.

---

[7] That said, if, after a defendant's sentence has been modified pursuant to the FSA, the defendant finds himself eligible to benefit from Guidelines changes beyond those mandated by FAIR, the defendant may be able to move for another resentencing under § 3582(c)(2). *See Koons v. United States*, 138 S. Ct. 1783, 1788 (2018); *United States v. Calton*, 900 F.3d 706, 715 (5th Cir. 2018); *Banks*, 770 F.3d at 348.