# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
November 13, 2020

Lyle W. Cayce
Clerk

No. 19-30927

United States of America,

*Plaintiff—Appellee*,

*versus*

Kojak Batiste,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:06-CR-145-1

Before Graves, Costa, and Engelhardt, *Circuit Judges*.

Kurt D. Engelhardt, *Circuit Judge*:

Defendant-Appellant, Kojak Batiste, appeals the district court's denial of his motion for sentence reduction filed pursuant to section 404 of the First Step Act of 2018, Pub. L. 115-391, §404, 132 Stat. 5194–249 (2018). The First Step Act allows defendants who were convicted and sentenced for certain offenses involving cocaine base ("crack"), prior to the effective date of the Fair Sentencing Act of 2010, to be resentenced as if the reduced statutory minimum penalties implemented by the Fair Sentencing Act were in place at the time the offenses were committed. Finding no abuse of discretion or deficiency in the district court's ruling relative to Batiste's

sentence of imprisonment, we AFFIRM that aspect of the district court's November 7, 2019 order. Because the order does not expressly reference Batiste's request relative to his term of supervised release, however, we REMAND that portion of Batiste's motion to the district court for consideration and disposition in accordance with this opinion.

I.

Kojak Batiste pleaded guilty in 2007 to distributing 50 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii). By virtue of a bill to establish prior convictions having been filed pursuant to 21 U.S.C. § 851, Batiste's statutory mandatory minimum sentence was 20 years, rather than the 10 years that otherwise would have been applicable (in 2007) under 21 U.S.C. §§ 841(a)(1), (b)(1)(A). Based on a career offender enhancement, pursuant to U.S.S.G. § 4B1.1, his total offense level was 34 and his criminal history category was VI. His resulting sentencing guidelines range of imprisonment was 262 to 327 months of imprisonment. A statutory minimum term of 10 years of supervised release applied. On June 27, 2007, Batiste was sentenced as a career offender to a within-guidelines sentence of 262 months of imprisonment and 10 years of supervised release. His direct appeal was dismissed, and his efforts to obtain postconviction relief, including challenges to his career offender classification and resulting sentence of 262 months of imprisonment, were unsuccessful.

In February 2019, Batiste filed a pro se motion seeking a reduction of sentence under section 404 of the First Step Act. In September 2019, Batiste, represented by counsel, submitted a memorandum in support of the motion. The government opposed the motion. By written Order and Reasons entered on November 7, 2019, the district court denied the motion. This appeal followed.

No. 19-30927

## II.

The district court's discretionary decision whether to reduce a sentence pursuant to the First Step Act is generally reviewed for an abuse of discretion. *United States v. Stewart,* 964 F.3d 433, 435 (5th Cir. 2020); *United States v. Jackson*, 945 F.3d 315, 319 & n.2 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2699 (2020). It is the defendant's burden to "show that the trial judge's action amounted to an . . . abuse of discretion." *United States v. Garcia*, 693 F.2d 412, 415 (5th Cir. 1982). "A court abuses its discretion when the court makes an error of law or bases its decision on a clearly erroneous assessment of the evidence." *United States v. Larry*, 632 F.3d 933, 936 (5th Cir. 2011) (internal quotation marks and citation omitted). "[T]o the extent the court's determination turns on the meaning of a federal statute such as the [First Step Act]," *de novo* review applies. *Jackson*, 945 F.3d at 319 (internal quotation marks and citation omitted).

## III.

The First Step Act of 2018 was enacted to remedy a gap left open by the Fair Sentencing Act of 2010 and various amendments to the United States Sentencing Guidelines relative to sentences imposed for certain crack offenses. In 2010, Congress enacted the Fair Sentencing Act in order to, among other things, reduce the disparity in treatment of crack and powder cocaine offenses by increasing the threshold quantities of crack required to trigger the mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A) and (B). *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Specifically, section 2 of the Fair Sentencing Act "increased the drug amounts triggering mandatory minimums for crack trafficking offenses from 5 grams to 28 grams in respect to the 5-year minimum and from 50 grams to 280 grams in respect to the 10-year minimum." *Dorsey v. United States*, 567 U.S. 260, 269 (2012). In effect, section 2 "reduc[ed] the crack-to-powder cocaine disparity from 100–to–1 to 18–to–1." *Id.* at 264. Section

3 of the Fair Sentencing Act "eliminated a mandatory minimum sentence for simple possession of cocaine base." *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir.), *cert. denied*, 140 S. Ct. 285 (2019). The Fair Sentencing Act additionally instructed the Sentencing Commission to "make such conforming amendments to the Federal [S]entencing [G]uidelines as the Commission determines necessary to achieve consistency with other guideline provisions and applicable law." Pub. L. No. 111-220, § 8(2), 124 Stat. at 2374.

Importantly, the Fair Sentencing Act's statutory changes were *not* retroactive. *Jackson*, 945 F.3d at 318. As a result, sentence modifications based on Sentencing Guidelines amendments that were implemented pursuant to the Fair Sentencing Act remained unavailable to (1) persons whose sentences were restricted by pre-Fair Sentencing Act statutory minimums; and (2) persons ineligible under 18 U.S.C. § 3582(c)(2) by virtue of having been sentenced as career offenders, pursuant to U.S.S.G. § 4B1.1, "based on" higher guideline ranges than the reduced drug quantity guideline ranges in U.S.S.G. § 2D1.1. *See, e.g., Stewart*, 964 F.3d at 436 (citing U.S.S.G. § 1B1.10, cmt. 1); *United States v. Quintanilla*, 868 F.3d 315, 318 (5th Cir. 2017).

On December 21, 2018, however, the First Step Act of 2018 became law, introducing a number of criminal justice reforms. Pertinent here, section 404 of the First Step Act concerns retroactive application of the Fair Sentencing Act of 2010. Pub. L. No. 115-391, § 404(b), 132 Stat. at 5222.[1]

---

[1]  Section 404 of the First Step Act of 2018 provides:

(a) DEFINITION OF COVERED OFFENSE.—In this section, the term "covered offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

Specifically, section 404 gives courts the discretion to retroactively apply the Fair Sentencing Act to reduce a prisoner's sentence for certain covered offenses. *Hegwood*, 934 F.3d at 418 ("It is clear that the First Step Act grants a district judge limited authority to consider reducing a sentence previously imposed."). A defendant is eligible for a sentence reduction under the First Step Act if: (1) he committed a "covered offense"; (2) his sentence was not previously imposed or reduced pursuant to the Fair Sentencing Act; and (3) he did not previously file a motion under the First Step Act that was denied on the merits. *Id.* at 416–17.

A "covered offense" within the meaning of the First Step Act is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010, that was committed before August 3, 2010." Pub. L. 115-391, §404(a), 132 Stat. at 5222. Whether a defendant has a "covered offense" under section 404(a) depends on the statute under which he was convicted, rather than facts specific to the defendant's violation. *Jackson*, 945 F.3d at 319–20. Thus, if a defendant was convicted of violating a *statute* whose penalties were modified

---

(b) DEFENDANTS PREVIOUSLY SENTENCED.—A court that imposed a sentence for a covered offense *may*, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, *impose* a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) LIMITATIONS.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

Pub. L. No. 115-391, § 404, 132 Stat. at 5222 (emphasis added).

by the Fair Sentencing Act, that defendant satisfies that aspect of a "covered offense." *Id.*

In terms of procedure, a reduced sentence may be imposed, pursuant to the First Step Act, upon motion made by a party, the Bureau of Prisons, or the court. Pub. L. No. 115-391, § 404(b), 132 Stat. at 5222. Nothing in section 404 expressly requires that a hearing be held. *Jackson*, 945 F.3d at 321. And, in *Jackson*, we rejected the defendant's contention that the district court abused its discretion by "supposedly failing to conduct a 'complete review' of his motion 'on the merits.'" *Id.* In contrast to cases in which a procedural deficiency had occurred, we determined that Jackson had had "his day in court" where he had "filed a detailed motion explaining why he should get a new sentence; the government responded; the court denied the motion; and, on limited remand, it explained why." *Id.* at 322.

Eligibility for resentencing under the First Step Act does not equate to entitlement. *Id.* at 321. Indeed, the statute expressly states: "Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section." Pub. L. No. 115-391, § 404(c), 132 Stat. at 5222. To the contrary, the decision whether to wield the resentencing authority granted by the First Step Act is one committed to the court's discretion. *Jackson*, 945 F.3d at 321.

The First Step Act likewise expressly prescribes the scope of the re-sentencing authority granted to courts. Specifically, section 404 directs: "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. No. 115-391, § 404(b), 132 Stat. at 5222. Given this statutory directive, "[i]t is clear that the First Step Act grants a district judge [only] limited authority to consider reducing a sentence previously imposed." *Hegwood*, 934 F.3d at 418.

IV.

Since the statute's enactment in 2018, we, like the other circuit courts, have been asked to answer various questions regarding the proper interpretation and application of the First Step Act. These decisions inform and aid our consideration of the issues presented in this appeal.

A. *Other Changes in the Law*

In *Hegwood*, the defendant's sentence was based in part on a § 4B1.1 enhancement because he was determined to be a career offender due to his two prior felony controlled-substance offenses. *Hegwood*, 934 F.3d at 415. In addition to seeking the benefit of the reduced penalties set forth in the Fair Sentencing Act via section 404 of the First Step Act, Hegwood also sought application of *United States v. Tanksley*, 848 F.3d 347, 352 (5th Cir.), *opinion supplemented*, 854 F.3d 284 (5th Cir. 2017), in which this court held that, in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), a particular Texas controlled substance offense no longer qualifies as a predicate conviction for purposes of the § 4B1.1 career offender enhancement. *Id.* at 416. In support of his position, Hegwood argued that the use of the word "impose" in the First Step Act, rather than the word "modify" found in 18 U.S.C. § 3582(c), along with the limitations referenced in U.S.S.G. §1B1.10(a)(3) for § 3582(c) modifications, meant that "the First Step Act requires a [Sentencing] Guidelines calculation to be made that is correct as of the time of the new sentence, and Section 3553(a) factors are to be applied anew." *Id.* at 417–18. Section 3553(a)(4) directs that a district court, "in determining the particular sentence to be imposed, shall consider . . . the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4).

Rejecting Hegwood's argument, we reasoned that, under the First Step Act, "calculations that had earlier been made under the Sentencing

Guidelines are adjusted 'as if' the lower drug offense sentences were in effect at the time of the commission of the offense." *Hegwood*, 934 F.3d at 418. "That is the only explicit basis stated for a change in the sentencing[,][and][i]n statutory construction, the expression of one thing generally excludes the other." *Id.* Accordingly, we concluded:

> The express back-dating of Sections 2 and 3 of the Fair Sentencing Act of 2010—saying the new sentencing will be conducted "as if" those sections were in effect "at the time the covered offense was committed"— supports that Congress did *not* intend that other changes were to be made as if they too were in effect at the time of the offense.

*Id.* (emphasis added). We thus explained the mechanics of the First Step Act resentencing process as follows:

> The district court decides on a new sentence by placing itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act. The district court's action is better understood as imposing, not modifying, a sentence, because the sentencing is being conducted as if all the conditions for the original sentencing were again in place with the one exception. The new sentence conceptually substitutes for the original sentence, as opposed to modifying that sentence.

*Id.* at 418–19. On the other hand, *like* the sentence modification procedure in § 3582(c)(2), "which opens the door only slightly for modification of previously imposed sentences for certain specified reasons," imposition of a new sentence under § 404(b) similarly does not involve a "plenary resentencing proceeding" and permits "only a limited adjustment." *Id.* at 418 (quoting *Dillon v. United States,* 560 U.S. 817, 826 (2010)). Because of the district court's limited role under § 404(b), we held that "[t]he district court committed no error in continuing to apply the career-criminal enhancement when deciding on a proper sentence for Hegwood." *Id.* at 419.

No. 19-30927

In reaching this conclusion, we found no conflict between our interpretation of section 404 of the First Step Act and the provisions of 18 U.S.C. §§ 3582 and 3553. *Id.* at 418. We reasoned:

> The district court under Section 3582(a) is only required to consider the Section 3553(a) factors "to the extent that they are applicable." The government, relying on the fact that the First Step Act gives the court discretion whether to reduce a sentence, argues that the ordinary Section 3553(a) considerations apply to determine whether to reduce the defendant's sentence.

*Id.*

Earlier this year, in *Stewart*, we again faced a question concerning the legal authorities under which a First Step Act motion is to be considered. 964 F.3d at 437. In that case, the parties did not dispute Stewart's eligibility to seek a sentencing reduction under the First Step Act. Rather, they disagreed regarding the version of the Sentencing Guidelines that governed imposition of his reduced sentence. Citing *Hegwood*, the government argued Stewart's offense level should have been calculated using the 2001 Sentencing Guidelines (those in effect at the time of his original sentencing), rather than the less onerous 2018 Sentencing Guidelines, which by virtue of Amendment 750, would yield a lower offense level and resulting sentencing range. We held that the district court erred in refusing to apply Amendment 750 in calculating Stewart's post-First Step Act sentencing range, reasoning that Amendment 750 is "an alteration of the legal landscape" promulgated pursuant to the Fair Sentencing Act itself. *Stewart*, 964 F.3d at 437.

Significantly, *Hegwood* was distinguished as prohibiting only consideration of interim change in the law having nothing to do with the Fair Sentencing Act. *Id.* at 438. ("*Hegwood* primarily stands for the proposition that defendants seeking relief under section 404(b) of the [First Step Act] cannot take advantage of changes in the law that have nothing to do with [the

Fair Sentencing Act].") "Unlike the defendant in *Hegwood*, Stewart [did] not seek removal of his career offender status at all, let alone based on intervening, non-FAIR-related caselaw." *Id.* "Instead, Stewart invoke[d] a change in the law that *did* result from [the Fair Sentencing Act]: Amendment 750's revision of the marijuana equivalency for crack cocaine." *Id.* "Put differently, Amendment 750 is an alteration to the legal landscape 'mandated by [the Fair Sentencing Act]' and therefore a valid consideration in the 'mechanics of First Step Act sentencing.'" *Id.* at 439 (quoting *Hegwood,* 934 F.3d at 418).

Accordingly, although Stewart's *career offender enhancement* was not eliminated by the First Step Act (consistent with the limited legal changes that *Hegwood* has determined that the First Step Act authorizes), the Fair Sentencing Act's changed statutory minimums and maximums reduced his corresponding *career offender offense level* (from 37 to 34), pursuant to U.S.S.G. § 4B.1.1, such that his resulting guidelines range was 262–327 months imprisonment (using the 2018 Sentencing Guidelines), rather than 324–405 months imprisonment (using the 2001 Sentencing Guidelines). *Id.* at 436–39.[2] Notably, the *Stewart* panel was careful to emphasize that "we need not and do not decide whether a district court faced with a resentencing motion invoking section 404(b) of the [First Step Act] must apply *all* retroactive amendments to the Sentencing Guidelines." *Id.* at 439.

---

[2] Relatedly, in *Hegwood*, we affirmed the district court's two-point reduction of Hegwood's career offender offense level (based on the First Step Act), as well as the district court's refusal to eliminate Hegwood's career offender enhancement based on "intervening caselaw" that would, if applied, "preclude[] his prior convictions from triggering the career offender enhancement altogether." *See Stewart*, 964 F.3d at 438 (citing *Hegwood*, 934 F.3d at 416–19).

B. *Consideration of Post-Sentencing Conduct*

In *Jackson*, which was decided in the interim between *Hegwood* and *Stewart*, we rejected the assertion that the district court is *obligated* to consider the movant's post-sentencing conduct. 945 F.3d at 322 & n.7. To explain our ruling, we reiterated *Hegwood*'s conclusions that, under the First Step Act, the court (1) "plac[es] itself *in the time frame of the original sentencing*, altering the relevant legal landscape *only by* the changes mandated by the 2010 Fair Sentencing Act"; and (2) "cannot consider *other* post-sentencing changes in the law." *Id.* (quoting *Hegwood*, 934 F.3d at 418) (emphasis added). Given those determinations, we reasoned, in *Jackson*, that it "would therefore make little sense to *mandate . . .* that the court consider a defendant's *post-sentencing* conduct, which would be to peer outside 'the time frame of the original sentencing.'" 945 F.3d at 322 & n.8 (emphasis added in part). Nevertheless, "we did '*not* hold that the court *cannot* consider post-sentencing conduct—only that it isn't *required* to.'" *Id.* at 322 n.7 (emphasis added).

C. *Other Consideration of 18 U.S.C. § 3553 (a) Factors*

In *Jackson*, finding no abuse of discretion had occurred, we additionally concluded that the district court "properly considered Jackson's extensive criminal history and role in the offense in declining to reduce the sentence." 945 F.3d at 322. In other words, we determined that the district court *could* consider the § 3553(a) factors in deciding whether to reduce a sentence under the First Step Act. *Id.; see* 18 U.S.C. § 3553(a)(identifying factors including "the nature and circumstances of the offense and the history and characteristics of the defendant"). However, we did *not* "hold that the court *must* consider the factors in [] § 3553(a) in deciding whether to resentence under the [First Step Act]; instead, we "reserve[d] the issue for another day." *Id.* at 322 n.8.

No. 19-30927

D. *Reduction of a "Within Guidelines Range" Sentence*

Most recently, in *United States v. Carr,* 823 F. App'x 252 (5th Cir. 2020), the appellant argued that the district court erroneously interpreted the First Step Act to preclude the reduction of a sentence that remained within the imprisonment range calculated pursuant to applicable provisions of the United States Sentencing Guidelines  (hereinafter referred to as the "guidelines range") at the time of resentencing. Despite the First Step Act's statutory changes, Carr's resulting guidelines range was unaffected and his original sentence remained within that range. Carr was designated a career offender under U.S.S.G. § 4B1.1 and had been sentenced to concurrent 327-month prison terms on two counts, as well as a consecutive term of 60 months on a firearm offense.  In his First Step Act motion, Carr argued that his good behavior in prison warranted a downward reduction from the otherwise applicable guidelines range. Denying Carr's motion, the district court explained: "A downward variant sentence of imprisonment is not imposed since the original sentencing judge imposed a guideline sentence."

On appeal, both parties presumed that the First Step Act permits a downward departure from the guidelines range in this context. Carr argued that the district court, however, erroneously interpreted the First Step Act to *preclude* the reduction of a sentence that remained within the guidelines range at the time of a First Step Act resentencing. In support of this position, Carr emphasized the district court's failure to "address any of the arguments and evidence" that he had presented, including his "claimed exemplary post-sentencing conduct in prison."

Affirming the district court, we noted that *Jackson* expressly held that district courts applying the First Step Act are not "*obliged* to consider . . . post-sentencing conduct." *Carr,* 823 F. App'x at 255 n.2 (quoting *Jackson*, 945 F.3d at 321) (emphasis added).  We further concluded that Carr had

failed to show that the district court based its decision on an erroneous interpretation of the First Step Act, explaining:

> On the contrary, a more plausible interpretation of the district court's reasoning is that the court exercised its discretion and *chose* not to reduce Carr's original term of imprisonment. For example, the court explained that a downward variance "is" not imposed—not that a downward variance "must" not be imposed, "cannot" be imposed, or "may" not be imposed. In the absence of any mandatory language, we cannot assume that the district court misinterpreted the [First Step] Act and perceived itself to be bound by a statutory rule or requirement. Indeed, Carr himself argued in the district court that the First Step Act "places no restriction on what [a court] may consider in imposing a reduced sentence." To be sure, we find more persuasive the understanding that the district court believed Carr's original term of imprisonment to remain appropriate, and so decided, as an exercise of its broad discretion, not to impose a lesser term.
>
> In any event, even if we found the district court's reasoning ambiguous, Carr has the burden to convince us that an abuse of discretion actually occurred. *Garcia*, 693 F.2d at 415. Identifying an ambiguous statement that *could* be read to evince an abuse of discretion is not enough.

*Carr,* 823 F. App'x at 255.

## V.

Regarding Batiste's section 404 motion, the record before us reflects a probation officer's determination that, under the Fair Sentencing Act, as made retroactive by the First Step Act, Batiste's statutory mandatory minimum sentence was reduced from 240 months to 120 months. No other change was noted. A screening committee agreed that Batiste was eligible

under section 404 of the First Step Act, but the government opposed any reduction "in light of the career offender Guideline."

Enrolling as Batiste's counsel, the Federal Public Defender filed a memorandum in support of the motion for reduction, arguing that a reduction was warranted in light of Batiste's post-sentencing conduct, "the individualized circumstances of his case[,] and . . . the § 3553(a) sentencing factors." Acknowledging that his career offender guidelines range remained unchanged, by virtue of *Hegwood*, Batiste argued that the district court nevertheless had broad discretion to vary downward and requested that his 262-month sentence be reduced to the current statutory 120-month mandatory minimum or time-served.  Batiste argued that a 120-month sentence was appropriate in light of his post-sentencing conduct, including his work at the textile factory, development of trade skills to ensure success upon release, genuine commitment to rehabilitation, and, according to him, "extensive information demonstrating that he has learned from . . . his prior mistakes and will not recidivate. . . ."; the fact that he would no longer qualify as a career offender under the current Sentencing Guidelines; and other relevant sentencing factors under § 3553(a), including his history and characteristics, the nature of his non-violent drug offense, and the need to avoid unwarranted sentencing disparities.  He also requested that the district court reduce his term of supervised release from 10 years to 8 years, which he noted was the current statutory minimum term of supervised release.

The government conceded that Batiste was eligible for a potential reduction under the First Step Act, with the applicable statutory penalty range now 10 years to life imprisonment, rather than 20 years to life, and that the court had discretion to reduce it. The government nevertheless requested that the district court either deny the motion or limit any reduction, considering Batiste's criminal history and that his 262-month sentence was within the unchanged career offender guidelines range.   In considering

whether and to what extent to reduce the defendant's sentence, the government agreed that the district court should consider the relevant § 3553(a) factors, along with any positive or negative post-sentencing conduct in assessing whether to reduce the sentence. But, citing *Hegwood*, the government maintained that the First Step Act did *not* allow the court to revisit Batiste's status as a career offender. The government also acknowledged Batiste's good conduct post-sentencing but concluded that nothing in the record suggested that the original sentence was unwarranted in light of Batiste's criminal history. Specifically, the government emphasized several points in the opposition memorandum that it submitted to the district court, arguing that "these circumstances support a lengthy sentence for a defendant who continually took part in criminal activity for about thirteen years before being charged in the instant case:"

> First, in light of *Hegwood,* Batiste remains a career offender. The 2016 amendments to the Guidelines' "crime of violence" definition for career-offender purposes, which were prompted by *Johnson v. United States*, 135 S. Ct. 2551 (2015), were not made retroactive by the Sentencing Commission. Second, Batiste accumulated eighteen criminal history points, five more than needed to be placed in Category VI. Third, many of his offenses reflect a disregard for the wellbeing of others, [including hit and run and negligent injury; driving while intoxicated; and aggravated flight from an officer.] Fourth, Batiste failed to take advantage of lenient sentences, probationary sentences, and parole supervision . . . ; [and], when [he] committed [the] instant federal crime, he was on state parole following release from prison for distributing cocaine. Fifth, even if his conviction for aggravated flight from an officer is no longer a crime of violence under the [Sentencing] Guidelines, it nonetheless involved a volitional refusal to stop a vehicle "under circumstances wherein human life is endangered." La. Rev. Stat. 14:108.1(C). Indeed, the PSR reflected that Batiste forced another vehicle off the street and almost struck a pedestrian who was walking her dog.

Responding to the government's criticism of Batiste's assertion that he would not be a career offender if sentenced today, Batiste argued to the district court:

> [T]hat point is directly relevant to several of the [§3553(a)] sentencing factors—his history and characteristics, the kinds of sentences available, policy statements and amendments to the [Sentencing] Guidelines, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. It also is relevant to the [c]ourt's consideration of the underlying purposes of incarceration and, specifically, what sentence will be "sufficient, but not greater than necessary" to comply with those goals in [his] case. In other words, whether [] Batiste is *entitled* to a recalculation of his Guidelines range has no bearing on this [c]ourt's ability to consider his current career offender status in assessing the relevant § 3553(a) factors—which the [g]overnment agrees the [c]ourt should do—and determining an appropriate sentence reduction.

The district court denied Batiste's motion. Although agreeing that Batiste's offense was a "covered offense" under the First Step Act, and the 120-month mandatory minimum applied, the court decided that a sentence of 262 months, which was within the guidelines range of 262 to 327 months of imprisonment, was appropriate.

On appeal, Batiste argues that (1) the district court misinterpreted *Hegwood* as precluding consideration of the § 3553(a) factors during First Step Act sentencings and preventing any downward departure or variance from the guidelines range; (2) the district court failed to adequately explain its sentencing decision; (3) the district court's re-imposition of a 262-month sentence resulted in a substantively unreasonable sentence; and (4) that the district court failed to consider the guidelines range applicable to him if he were sentenced today. Although Batiste notes his fourth issue is foreclosed by *Hegwood*, he has raised it to preserve it for further review.

A. *Misinterpretation of Hegwood*

Although acknowledging our decision in *Hegwood*—prohibiting a "plenary resentencing" and any alteration of the relevant "legal landscape" beyond the changes mandated by the Fair Sentencing Act—Batiste argues that district courts are nevertheless *required* to consider the relevant sentencing factors under § 3553(a) in deciding whether to reduce a defendant's sentence pursuant to section 404, and that the district court here failed to do so. He contends that the district court instead misinterpreted *Hegwood* as precluding consideration of the § 3553(a) factors, noting that the district court did not mention those factors in its decision or otherwise indicate that it considered them.

Batiste also argues that the district court misinterpreted *Hegwood* as requiring the mandatory application of the career offender guidelines range. In essence, he argues that the district court erroneously denied relief under the First Step Act based on its inaccurate assumption that it lacked the authority under *Hegwood* to vary downward below the unchanged guidelines imprisonment range because the original sentence was at the bottom of that guidelines range.

In the instant matter, the district court issued a six-page written order and reasons in which it accurately describes Batiste's request for a reduction based on his post-sentencing conduct, the circumstances of the case, and the § 3553(a) sentencing factors. The district court's ruling followed lengthy and comprehensive briefing by the parties, including a reply memorandum from Batiste, in which the parties' arguments were thoroughly expressed and analyzed. Significantly, in each of these submissions, there is no dispute that—despite the "legal landscape" limits of *Hegwood*—the court should consider all relevant § 3553(a) factors, including the defendant's criminal history, his post-conviction progress, and the sentencing options available to the court.

No. 19-30927

In its ruling, the district court stated that, in determining Batiste's sentence, it was "heeding the rule announced in *Hegwood*," i.e., that it "plac[e] itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act." *Hegwood*, 934 F.3d at 418. Denying Batiste's request for a sentence reduction, the district court explained its decision:

> At the time of Batiste's original sentencing, the mandatory minimum was 240 months; however, the court declined to sentence him to the mandatory minimum, instead imposing a higher sentence, at the bottom of the Guidelines range. While recognizing the interim changes in the law, and acknowledging the progress Batiste appears to have made in prison, the court observes that nothing has changed in the facts that informed its original sentencing decision, including Batiste's criminal history and the fact that the predicate crime of violence, aggravated flight from an officer, involved Batiste forcing another vehicle off the street and almost striking a pedestrian, clearly present[ed] a serious potential risk of physical injury to another. *See* U.S.S.G. § 4B1.2(a)(2006).

> Accordingly, the court, heeding the rule announced in *Hegwood*, does not engage in a plenary resentencing, but considers this sentence as if section two of the Fair Sentencing Act of 2010 was in effect at the time of Batiste's offense, providing a 120 month statutory minimum for his crime. It does not consider any other interim changes in the law, including the revision to the career offender Guideline. Therefore, Batiste's Guideline Range is 262–327 months, and the court finds that a sentence of 262 months is appropriate.

In its written ruling, the district court expressly acknowledges the interim changes in the law, *Hegwood*, and Batiste's progress. Significantly, however, the court's focus is on the *facts* informing its original sentencing decision, particularly including Batiste's criminal history and the serious risk of physical injury presented by the crime of violence underlying Batiste's

career offender enhancement. The court acknowledges that it could have imposed a lower sentence—the statutory minimum, rather than the bottom of the guideline ranges—at Batiste's original sentencing, but did not, and emphasizes that nothing in those facts have changed.

Addressing Batiste's criticism of the district court's decision and analysis, the government emphasizes that, while this court has not resolved whether district courts *must* consider the § 3553(a) factors in section 404 proceedings, the written order reflects that the district court gave due consideration to Batiste's arguments in favor of a reduction in light of the § 3553(a) factors.  The government also rejects Batiste's argument that the district court misinterpreted *Hegwood*, noting that the district court made no statement indicating that it was *required* to apply a within-guidelines sentence.  As the court itself noted, the district judge had the opportunity to depart at the time of the original sentence, subject to the statutory minimum, but could not find a reason to do so.  The government likewise emphasizes that the district court did *not* suggest, in its November 2019 ruling, that it wanted to reduce Batiste's sentence below the career offender guidelines range but thought itself legally barred from doing so.

The government's observations are insightful and well-founded. Indeed, we have never held that courts cannot grant relief under the First Step Act where the Sentencing Guidelines imprisonment range remains unchanged and the original sentence is within that range.  In other words, we have not held that a downward variance is not permitted in those circumstances.

At any rate, we are not persuaded that any legal error occurred here in the district court's assessment of Batiste's motion. We are not convinced that the district court based its determination on an erroneous interpretation of the First Step Act, *Hegwood,* or any of our other decisions interpreting the statute.  Instead, as we concluded in our recent decision in *Carr,* it is more

plausible, on the record before us, that the district court, having evaluated all pertinent factors, simply exercised its statutory discretion to deny the motion. Furthermore, in *Jackson*, we found no abuse of discretion where the original life sentence was within the current statutory range and the court relied on the defendant's criminal history and role in the offense in denying a reduction. 945 F.3d at 321-22. We similarly find no abuse of discretion here.

## B. *Adequacy of Explanation*

With respect to the adequacy of the district court's reasons, Batiste argues that the district court committed a significant procedural error by failing to address his arguments in support of a reduced sentence of imprisonment and failing to mention his request for a reduction of his term of supervised release to the new statutory minimum term of eight years.

The government maintains that Batiste's arguments regarding the adequacy of the district court's explanation of its ruling essentially amount to a disagreement with the district court's reasoning and, in any event, the district court's six-page written order, in which the court specifically noted Batiste's arguments, provides adequate reasons for its sentencing decision relative to Batiste's term of imprisonment. However, the government concedes that the district court's order did not address Batiste's request for a reduction of his term of supervised release and acknowledges that remand may be appropriate.

On this record, we agree with the government's assertion. As discussed above, the basis of the district court's ruling is aptly recounted in its November 7, 2019 Order and Reasons. Accordingly, we reject Batiste's challenge to the sufficiency of the district court's explanation of its denial of Batiste's requested reduction of his term of imprisonment. The district court's written order adequately reflects that it gave due consideration to Batiste's arguments in favor of a reduction of his sentence of imprisonment based on the § 3553(a) factors and his post-conviction progress. In *United*

*States v. Evans,* 587 F.3d 667, 673 (5th Cir. 2009), we determined, in the context of 18 U.S.C. § 3582(c)(2) motion, that the district court was not required to provide reasons or explain its consideration of the § 3553(a) factors, and that there was no abuse of discretion where the relevant arguments were before the court when it made its resentencing determination. On the record before us, we reach the same conclusion here.

However, as the parties note, the district court's order did not address Batiste's request for a reduction of his term of supervised release. Batiste was sentenced in 2007 to 10 years of supervised release, which was the applicable minimum term of supervised release. Pursuant to the First Step Act, the minimum term is now eight years.

The First Step Act eligibility information sheet did not mention the term of supervised release, nor did any member of the screening committee address the applicable term of supervised release. Nevertheless, Batiste's motion requested a reduction of the term, albeit without discussing the issue. The government's submission did not address the issue. Thus, on this record, it is not clear whether the district court considered and implicitly rejected Batiste's request for a reduction of his term of supervised release, or merely overlooked it. Accordingly, we will remand that issue to the district court for consideration and disposition.

## C. *Substantive Reasonableness of Sentence*

With respect to the substantive reasonableness of his sentence, Batiste argues that the district court's re-imposition of a 262-month sentence was substantively unreasonable based on the totality of the circumstances of his case, particularly his post-sentencing conduct, and represented a clear error of judgment in balancing the § 3553(a) sentencing factors. The government argues that this court should not conduct a substantive reasonableness review of Batiste's sentence. As noted by the government, we have held that the bifurcated procedural soundness and substantive reasonableness review of

sentencing decisions that is derived from *United States v. Booker,* 543 U.S. 220 (2005), and its progeny, is inapplicable in the context of § 3582(c)(2) proceedings because they "do not constitute full resentencings." *See Evans*, 587 F. 3d at 671–72.

Although we have noted some distinctions between First Step Act sentence reduction motions and § 3582 motions, we also have found them similar in other respects. Pertinent here, in adopting an abuse of discretion standard of review for the discretionary component of a district court's First Step Act, section 404 determination, we analogized to the "abuse of discretion" standard of review applicable to "decisions whether to reduce sentences" pursuant to § 3582(c)(2). *See Jackson*, 945 F.3d at 322 and n.2. A *de novo* standard of review likewise applies "to the extent the court's determination turns on the 'meaning of a federal statute' such as the [First Step Act]." *Jackson*, 945 F.3d at 319 (quoting *Hegwood*, 934 F.3d at 417). Given the foregoing, we similarly conclude the substantive reasonableness standard does not apply here. And, as stated above, Batiste has not demonstrated an abuse of discretion or legal error occurred.

D.   *Required Recalculation of Guidelines Range* (foreclosed issue)

Batiste argues that the district court committed procedural error by refusing to recalculate and apply the current non-career offender guidelines range of 77 to 96 months imprisonment.  The district court noted Batiste's argument, but, applying *Hegwood*, concluded that Batiste's career offender status is unchanged. Conceding that his argument is foreclosed by *Hegwood*, Batiste raises the issue solely to preserve it for further review.  Considering Batiste's concession and our decision in *Hegwood*, additional analysis of this foreclosed issue is not required.

No. 19-30927

## VI.

As stated herein, we AFFIRM the district court's denial of Batiste's motion seeking reduction of his sentence of imprisonment. Because it is not apparent that the district court considered Batiste's motion with respect to his term of supervised release, we REMAND that aspect of this proceeding to the district court for consideration and disposition.